IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EUGENE DICKEY | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV781HSO-JMR |
| | § | |
| NORTHROP GRUMMAN SHIP | § | DEFENDANT |
| SYSTEMS, INC. | § | |

ORDER AND REASONS DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT on Plaintiff Eugene Dickey's
["Dickey"] Motion for Partial Summary Judgment [377-1] filed July 25, 2007, in the
above captioned cause.  Defendant, Northrop Grumman Ship Systems ["NGSS"],
filed a Response in opposition  [415-1] on August 31, 2007, and Plaintiff filed a
Rebuttal [425-1] on September 24, 2007.  After due consideration of the
submissions, the record on file and the relevant legal authorities, the Court finds
that Plaintiff cannot show that he is entitled to summary judgment on his hostile
work environment claim.

I. FACTS AND PROCEDURAL HISTORY

Eugene Dickey was hired by Ingalls Shipbuilding, Inc. [now NGGS], as a
temporary fan man on May 21, 1965.  At the time of his hire, the shipyard was
racially segregated.   See Pl.'s Dep. at p. 9, 28, attached as Ex. "J" to Pl.'s Mot. for
Partial Summ. J.    Sometime in 1967 or 1968, Dickey was moved into the Welding
Department and began working as a Pipe Welder.  Dickey retired from NGSS as a

Pipe Welder on January 7, 2002, after a 37 year career.  *See id.; see also* Pl.'s Compl., ¶ 3.

An initial Complaint [1-1] was filed in this Court on March 21, 2001, and a First Amended Complaint was filed on April 26, 2001, naming eleven (11) individuals and the Ingalls Workers for Justice as Plaintiffs.  Dickey was not a named Plaintiff in the original suit.  Named Defendants were Ingalls Shipbuilding, Inc.; Litton Industries; and Northrop Grumman.  All three Defendants filed a Motion to Dismiss [7-1] on June 20, 2001, pursuant to Federal Rule of Civil Procedure 12.  As detailed in its Memorandum Opinion [16-1] of February 27, 2002, and pursuant to its Judgment of February 28, 2002 [17-1], the Court dismissed Plaintiffs' Thirteenth Amendment and Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants; dismissed Ingalls Workers for Justice as a Plaintiff; and dismissed Plaintiffs' class action claims.  In their Motion to Alter or Amend Judgment filed on March 14, 2002 [18-1], the remaining Plaintiffs moved the Court to reconsider its entry of judgment dismissing Plaintiffs' class action allegations, and in their Motion for Entry of a Separate Judgment filed April 22, 2002 [23-1], the remaining Plaintiffs sought to appeal the Court's prior order.  The Court denied both of these Motions by Order entered on July 10, 2002 [26-1].

On July 16, 2002, by way of a Motion for Leave to File a Complaint in Intervention [27-1], putative class members requested leave to intervene as Plaintiffs in this action, pursuant to Federal Rule of Civil Procedure 24.  For the first time, Dickey was identified as a putative class member and as a Plaintiff-

Intervenor in the proposed "Complaint in Intervention for Declaratory Judgment and Injunctive Relief and Damages," attached as Exhibit "A" [27-2] to the Motion for Leave to File a Complaint in Intervention.  The Court granted leave to amend on January 28, 2003 [40-1], and the Complaint in Intervention was filed on February 13, 2003 [42-1], naming an additional 171 Plaintiffs-Intervenors, including Dickey.   On April 7, 2003, with leave of Court, Plaintiffs filed a Second Amended Complaint [48-1].

On May 8, 2003, Defendant filed a Motion to Sever [50-1], seeking to sever each individual Plaintiff's claim[s] into a separate case, consolidated solely for the purpose of discovery, which the Court denied, without prejudice, pursuant to an Order signed March 31, 2004 [56-1].  On June 30, 2006, the Court issued an Order to Show Cause [330-1] as to why Plaintiffs' claims should not be severed into separate causes of action.   Plaintiffs filed their Response [342-1] to this Order on July 20, 2006, and Defendant subsequently filed a Motion to Sever on August 4, 2006 [349-1], which was granted by this Court on August 17, 2006 [360-1], and which required Plaintiffs to file separate complaints.

Dickey filed his Amended Complaint for Injunctive and Declaratory Relief and Damages against NGSS,[1] on September 29, 2006 [362- 1].  NGGS filed its Answer on October 18, 2006 [362-1].  In his Complaint, Dickey seeks injunctive and

---

[1] Counsel for Defendant Ingalls Shipbuilding, Inc., filed a Notice of Name Change in the original action on August 15, 2002 [31-1], wherein Defendant's name in the style of the case was changed to "Northrop Grumman Ship Systems, Inc."

declaratory relief to prevent alleged continuing, systemic, and unjustified race discrimination by Defendant with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of African-American employees.  *See* Pl.'s Compl., ¶ 1.  Dickey alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment.  *See id.* ¶¶ 29-36.  In addition to injunctive and declaratory relief, Dickey seeks compensatory and punitive damages.  *See id.,* ¶ 1.

Dickey, an African-American, specifically charges that he has never been promoted by Defendant and that he was denied promotions and transfers by the Defendant because of his race.  Plaintiff claims that Caucasian employees with less training and experience at NGSS routinely received promotions.  *See* Pl.'s Compl., ¶¶ 21-23, 26-28.  Dickey further asserts that: 1)  he was demoted on three occasions on the basis of his race, *see* Pl.'s Compl., ¶ 24; and 2) he received less compensation than white co-workers for performing identical work, *see* Pl.'s Compl., ¶ 25.

Sometime in January of 2000, the Ingalls Workers for Justice filed a charge of discrimination raising numerous claims, including violations of Title VII of the Civil Rights Act of 1964.  The Equal Employment Opportunity Commission ["EEOC"] issued a determination on December 20, 2000, which in part stated that:

> Title VII obligates an employer to maintain a working atmosphere free of intimidation based upon race, color, religion, sex, age, disability, or national origin.  Clearly, an employer is responsible for the actions of its employees.  Respondent's failure to provide a work environment free of racial intimidation is a violation of Section 703(a) of Title VII. Based on testimonial evidence, there is reasonable cause to believe

> that the aggrieved parties have been subjected to a racially hostile
> environment because of their race [black], in that they have been
> subjected to racist graffiti in some areas of the facility.  Respondent
> contends that it has a program designed to locate and remove graffiti
> when its found, however, the measures taken by the Respondent, thus
> far, have not proven to remedy the situation.

EEOC Determination, [381-2] at p. 2 attached as Ex. "TT" to Pl,'s Mot. for Partial
Summ. J.


## II. DISCUSSION

A.    Standard of Review

Rule  56(c) of the Federal Rules of Civil Procedure states that the judgment

sought shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that a moving party is

entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  The purpose of

summary judgment is to isolate and dispose of factually unsupported claims or

defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V*

*Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary

judgment.  The dispute must be genuine, and the facts must be material.  *See Booth*

*v. Wal-Mart Stores, Inc.*, 75 F. Supp.2d 541, 543 (S.D. Miss. 1999).  With regard to

"materiality," only those disputes or facts that might affect the outcome of the

lawsuit under the governing substantive law will preclude summary judgment.  *See*

*id.* at 543 (*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir.

1987)).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (*quoting Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a plaintiff must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Booth*, 75 F. Supp.2d at 543.   If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *See Booth,* 75 F. Supp.2d at 543.

B.   Hostile Work Environment Claim

Dickey moves the Court to grant summary judgment on his hostile work environment claim and to partially strike the Ninth Defense asserted by NGSS in its Answer.  Dickey contends that NGSS failed to discharge its duty to prevent and correct the racially hostile work environment by failing to adopt a policy prohibiting racial harassment.

> [T]he uncontroverted evidence unequivocally establishes that NGSS simply failed to discharge its duty to prevent and correct the racially hostile work environment that pervaded the shipyard for decades and that endures today.  The primary evidence of this failure is that NGSS-

-for the duration of Plaintiff's career - - had <u>no</u> policy prohibiting racial harassment, even though the workplace had been replete, for years, with racist graffiti and other racially offensive conduct.

Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., p. 1-2 (emphasis in original).

According to Dickey, this failure is fatal to the affirmative defense raised by NGSS.  *See id.*   NGSS raised the following defense:

NGSS exercised reasonable care to prevent and correct promptly any conduct alleged to constitute a racially hostile work environment, and the Plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities provided by NGSS.

Answer of NGSS [364-1], at p. 6.

Dickey's racial discrimination claims fall into three categories: (1) denial of promotions and demotions; (2) disparate pay;  and (3) hostile work environment. The instant Motion seeks partial summary judgment solely on the hostile work environment claim. Dickey maintains that throughout his 37 years of working at NGSS: 1) he has been exposed to racially derogatory writings, depictions, and graffiti on a constant basis in numerous places, including hangman's nooses in the workplace, *see* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J., pp. 2-7; and 2) he has repeatedly been exposed to racial epithets and has been personally referred to by one of his supervisors as "Little Rascal", *see id*. at pp. 7-9.   Dickey claims exposure to these elements was severe and/or pervasive enough to create an abusive working environment.  *See id*. at p. 22.

To establish a *prima facie* case of a hostile work environment, Dickey must show that: (1) he belonged to a protected group; (2) he was subjected to unwelcome

harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Ellis v. Principi,* WL 2510620 *3 (5th Cir. 2007)(*citing Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996). "For harassment on the basis of race to affect a term, condition, or privilege of employment ... it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir.  1996)(Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.  *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17,  21-22 (1993*); see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999).  Thus, not only must Dickey perceive the environment as hostile, the conduct must also be such that a reasonable person would find it hostile or abusive. *See id.*

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *See id.* at 23.  No single factor is determinative. *See id.*  As the Supreme Court has stated, "even without regard to ... tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." *Harris,* 510 U.S. at 22.

Defendant opposes summary judgment in Dickey's favor and by separate Motion, asks the Court to grant summary judgment in its favor on the grounds that: 1) Dickey is unable to establish that he was subjected to a hostile work environment, since evidence of what other employees experienced is irrelevant; 2) there is insufficient evidence to establish that NGSS "knew or should have known" of the alleged racial harassment; and 3) the subsequent remedial measures taken by NGSS were sufficient to remedy any harassment that Dickey experienced.

NGSS also contends that Dickey fails to offer sufficient evidence necessary to establish a hostile work environment claim based upon a continuing violation. "Dickey cannot invoke the continuing violation based on the alleged acts for which he should have sued when they occurred." *See* Def.'s Br. in Opp. to P.'s Mot. for Summ. J. at p. 18-20, 22.  Dickey contends that throughout his employment at

-9-

NGSS, he endured racial hostilities and intimidation.

With respect to hostile work environment claims, the Supreme Court has determined that "[t]he unlawful employment practice . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002).

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.* at 117.

The Fifth Circuit has explained the continuing violation theory in detail:

> The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. *See Berry v. Board of Supervisors of LSU,* 715 F.2d 971, 979 (5th Cir.1983). The core idea however, is that [e]quitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. At the same time, the mere perpetuation of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period....

*Messer v. Meno*, 130 F.3d 130, 134 -35 (5th Cir. 1997)*(quoting Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir.1985)); *see also Alldread v. City of Grenada*, 988 F.2d 1425, 1430-32 (5th Cir. 1993); *Hendrix v. City of Yazoo City, Miss.,* 911 F.2d 1102, 1103-04 (5th Cir. 1990); *Rendon v. AT & T Technologies,* 883 F.2d 388, 395-96 (5th Cir. 1989).

Although there is no definitive standard for what constitutes a continuing violation, a plaintiff must demonstrate more than a series of discriminatory acts. He must show an organized scheme leading to and including a present violation, *see Berry,* 715 F.2d at 981, such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action, *see Huckabay v. Moore,* 142 F.3d 233, 239 (5th Cir. 1998).  This inquiry may involve several factors, including the following three: (1) subject matter, i.e., do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) frequency, i.e., are the alleged acts recurring ...  or more in the nature of an isolated work assignment or employment decision; and (3) the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate.  Importantly, however, the particular context of individual employment situations requires a fact-specific inquiry that cannot easily be reduced to a formula. *See Huckabay,* 142 F.3d at 239.

(1)    Racist Graffiti and Hangman's Nooses

Dickey's deposition testimony asserts that he was exposed to racially

-11-

derogatory writings, depictions, and graffiti on numerous occasions during his tenure at NGSS.  Dickey testified that the last time he observed racist graffiti in the workplace at NGSS was a week or two before he retired in 2002, which is within the limitations period for maintaining this suit.  "[Y]ou would see it today and they had - a group on the second shift would come in and paint over it.  The next few days you'd see some more writing on the wall, and they'd come in and paint over it.  It didn't stay there long. ...  At one time they wasn't [sic] taking it off the wall.  Just every time you went in to use the stall it was there, KKK, nigger go home, things like that."  Pl.'s Dep. at p. 9, 28-30, 48, attached as Ex. "J" to Pl.'s Mot. for Partial Summ. J.

Dickey has tendered additional evidence in support of his claim which tends to establish the frequency and recurrence of racist graffiti at NGSS, as well as the degree of permanence which, if proven at trial, could serve to trigger a duty on the part of NGSS.  *See* Dep. of Jimmy Ates at p.49, attached as Ex. "C" to Pl.'s Mot. for Partial Summ. J.; *see also* Dep. of John Brooks at p. 62, attached as Ex. "F" to Pl.'s Mot. for Partial Summ. J.; Dep. of Earl Burbridge at pp. 77-78, attached as Ex. "G" to Pl.'s Mot. for Partial Summ. J.; Dep.  of David Cobb at p. 80-81, attached as Ex. "H" to Pl.'s Mot. for Partial Summ. J.; Dep. of David Cunningham at p. 107, attached as Ex. "I" to Pl.'s Mot. for Partial Summ. J.; Dep. of Dalton Duiett at p. 64, attached as Ex. "K" to Pl.'s Mot. for Partial Summ. J.; Dep. of Warren Guidry at p. 152, attached as Ex. "N" to Pl.'s Mot. for Partial Summ. J.; Dep. of Terry Hayes at pp. 248-250, attached as Ex. "O" to Pl.'s Mot. for Partial Summ. J.; Dep. of Guy

Hillman at pp. 90-94, attached as Ex. "R" to Pl.'s Mot. for Partial Summ. J.; Dep. of

Glenn Seymour at p. 108, attached as Ex. "KK" to Pl.'s Mot. for Partial Summ. J.;

Dep. of David Whitney at pp. 77-82, attached as Ex. "RR" to Pl.'s Mot. for Partial

Summ. J.

    NGSS maintains that Dickey has not satisfied his burden of maintaining a

hostile work environment claim inasmuch as the evidence he relies on is

mischaracterized and exaggerated.  NGSS claims that Dickey has cited to only

those portions of employee depositions concerning isolated incidents of graffiti.  *See*

Def.'s Mem. in Opp. to Pl,'s Mot. for Partial Summ. J. at pp. 8, 13.

    Dickey also testified that he observed the presence of a hangman's noose

sometime during 1988-1989, while working at NGSS and that he complained to his

"supervisor, foreman, superintendent, union people."  *See id*. at p. 33-34. "The next

day when I came in to work, I showed them where it was hanging."  *Id*. at p. 35.

There is also the deposition testimony of NGSS employees and other NGSS

supervisory and management personnel, indicating that they recalled various

incidents where nooses were fashioned and displayed at NGSS.  *See* Dep. of

Matthew Leggett at pp. 56-60, 71-79, attached as Ex. "Y" to Pl.'s Mot. for Partial

Summ. J.; Dep. of Gale Smith at p. 45, attached as Ex. "NN" to Pl.'s Mot. for Partial

Summ. J.; Dep. of Thomas Stallworth at pp. 28-30, 35-40 attached as Ex. "OO" to

Pl.'s Mot. for Partial Summ. J.

    The Fifth Circuit has determined that "the frequent making of nooses,

coupled with the presence of allegedly offensive racial remarks and the presence of

KKK graffiti at the worksite raise a fact issue regarding whether the work atmosphere at Ingalls was racially hostile." *Bell v. Ingalls Shipbuilding, Inc.*, 2000 WL 122384, *1 (5th Cir. 2000).

> NGSS submits that:
>
> > Dickey's attempt to use improper evidence of alleged nooses is even more extreme.  Again, regardless of how Dickey attempts to spin the facts, his experience remains the same.  He offers only the vague allegation that he saw nooses in the 1960's. . . .  Even Dickey's own testimony does not support his charge that 'rampant nooses permeated the work environment at the shipyard.'

Def.'s Mem. in Opp. to Pl.'s Mot. for Partial Summ. J. at p. 9.

The Court finds that based on the totality of the circumstances and although Dickey presents evidence to support his very serious allegations about the atmosphere at NGSS, the evidence offered by NGSS creates a material fact question precluding summary judgment on Dickey's hostile work environment claim.

> (2)   <u>Racial Epithets</u>

Dickey also alleges that throughout the duration of his employment at NGSS, he was exposed to racially insensitive remarks and racially offensive jokes.  *See* Pl.'s Second Supp. Resp. to Interrogatory No. 38 at pp. 48-50, attached as Ex. "TT" to Pl.'s Mot. for Partial Summ. J.  Dickey further claims that his superintendent, Mark Mason, repeatedly referred to him as "Little Rascal".  *See* Pl.'s Supp. Resp. to Interrogatory No. 38 at p. 52-53, attached as Ex. "UU" to Pl.'s Mot. for Partial Summ. J [381-2].  Dickey claims that he frequently overheard Caucasian supervisors and coworkers use the word "nigger" and tell racially insensitive jokes.

*See id.; see also* Pl.'s Dep. at p. 31,  attached as Ex. "J" to Def.'s Mot. for Summ. J. [385-3].  Testimony by NGSS employees indicates that racial epithets were used and overheard at the shipyard.  *See* Dep. of Robert Belcher at p.86, attached as Ex. "D" to Pl.'s Mot. for Partial Summ. J.; *see also* Dep.  of Janet Boyd 108, attached as Ex. "E" to Pl.'s Mot. for Partial Summ. J.;  Dep.  of Earl Burbridge at p. 70-71, attached as Ex. "G" to Pl.'s Mot. for Partial Summ. J.; Dep. of Gale Smith at p. 45, attached as Ex. "NN" to Pl.'s Mot. for Partial Summ. J.;

The Fifth Circuit has found that a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII. *See, e.g., Walker v. Thompson,* 214 F.3d 615, 626 (5th Cir. 2000) (holding that African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive to violate Title VII); *see also E.E.O.C. v. WC&M Enterprises, Inc.* 496 F.3d 393, 399-400 (5th Cir. 2007).

The summary judgment evidence before the Court demonstrates that the alleged remarks were made on multiple occasions and some within the relevant limitations period; therefore, at least at this juncture, the Court cannot conclude that these remarks were "simple teasing, offhand comments, and/or  isolated incidents." *See Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 347- 48 (5th Cir. 2007); *see also Hockman v. Westward Comm. LLC*, 407 F.3d 317, 326-27 (5th Cir. 2004)(discussion of frequency of harassment required to sustain hostile work

environment claim); *Walker v. Thompson,* 214 F.3d 615, 625 (5th Cir. 2000)(summary judgment precluded where evidence demonstrated years of inflammatory racial epithets); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1274 (7th Cir. 1991)(affirming trial court's finding of hostile work environment where Plaintiff was the victim of racial taunts including being called "Buckwheat" during his first ten years of employment).

NGSS once again submits that Dickey improperly relies on certain deposition testimony in order to maintain his hostile work environment claim.  In its brief, NGSS disputes a great deal of the testimony cited by Plaintiff.  "Dickey does not provide competent summary judgment evidence of racial epithets or nooses in the relevant time frame, and his proof about graffiti is insufficient...." Def.'s Mem. in Opp. to Pl.'s Mot. for Partial Summ. J. at p. 27.  NGSS offers evidence which it contends undermines Dickey's claims, including evidence of what it maintains were sufficient measures taken to remedy any grievances that Dickey may have had.

The Court is of the opinion that, based upon the evidence submitted by the parties, much of which is in dispute, sufficient questions of material fact exist in the record which preclude summary judgment on this claim.


## III. <u>CONCLUSION</u>

The Court finds that there is sufficient evidence in the record to create a material issue of fact as to whether the harassment alleged by Dickey was sufficiently severe and pervasive to create a hostile work environment.  Based upon

the presence of material fact questions regarding Dickey's hostile work environment claim, Dickey is not entitled to judgment as a matter of law and his Motion for Partial Summary Judgment must therefore be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED,** that, for the reasons cited herein, the Motion of Plaintiff, Eugene Dickey, filed July 25, 2007 [377-1], for Partial Summary Judgment, must be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 7th day of December, 2007.


*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-17-